```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ESSEX INSURANCE CO.            :      CIVIL ACTION
                               :
          v.                   :
                               :
RMJC, INC.                     :      NO. 01-4049
```

                FINDINGS OF FACT AND CONCLUSIONS OF LAW

Bartle, C.J.                                         November 1, 2007

       Plaintiff, Essex Insurance Company ("Essex"), initially sued its insured, RMJC, Inc. ("RMJC"), in this action for a declaration that it owed no duty to defend or indemnify RMJC for claims against it in an underlying action filed in the Court of Common Pleas of Philadelphia County, <u>Jaworski v. RMJC, Inc., et al.</u>, No. 2784 (C.P. Phila., May 14, 2003). Essex in its amended complaint now also seeks reimbursement of the $410,315.15 that it paid to satisfy the judgment against RMJC in the <u>Jaworski</u> action. Having held a non-jury trial, we now make the following findings of fact and conclusions of law.

I.

       Essex issued a commercial general liability insurance policy, number 2CB4096, to defendant RMJC, which operates the Show and Tel Show Bar, an adult nightclub featuring "totally nude dancing girls." The policy contained the following exclusion:

> ASSAULT AND/OR BATTERY
>
> Assault and/or Battery or out of any act or omission in connection with the prevention or suppression of such acts, whether caused by

>or at the instigation or direction of any
>Insured, Insured's Employees, patrons or any
>other person.

It is undisputed that on the night of March 26, 2000, Mark Jaworski attended his brother-in-law's bachelor party at the Show and Tel Show Bar. At around midnight, Jaworski became involved in an altercation with the business's security personnel, colloquially known as bouncers, and soon found himself at a hospital suffering from what would ultimately be recognized as serious and permanent injuries to his left wrist. The precise interplay between Jaworski and RMJC's bouncers has now been the subject of civil and criminal litigation for more than seven years.

The first legal repercussion of that incident came in the criminal trial of Terrence Benson, a Show and Tel bouncer involved in the removal of Jaworski from the nightclub on March 26. Benson was charged with "knowingly, intentionally, or recklessly caus[ing]/attempt[ing] to cause serious bodily injury to the complainant, Mark Jaworski, by punching him and throwing him down a flight of steps." Benson was subsequently convicted of simple assault after a bench trial in the Court of Common Pleas of Philadelphia County.[1] Commw. v. Benson, No. 0493 (C.P. Phila., Mar. 6, 2001).

Thereafter, on June 22, 2001, Jaworksi filed a civil Complaint in the Common Pleas Court against RMJC and Rayski,

---

1. Benson was acquitted of aggravated assault and recklessly endangering another person.

Inc., in which he alleged that while attending the bachelor party at the Show and Tel Show Bar on March 26, 2000, he suffered serious and permanent injuries when an employee of RMJC attacked him, dragged him out a side exit, and threw him down the stairs. Of crucial importance to the present matter, Jaworski pursued only negligence claims in that action and did not seek recovery on an assault and battery theory.

On August 9, 2001, shortly after Jaworski instituted his state court lawsuit, Essex filed the instant declaratory judgment action, in which it asserted that Jaworksi's injuries were caused by an assault and battery by an RMJC employee and thus were not covered under the policy.  Essex maintained that it had no duty to defend RMJC or to indemnify it should a judgment be entered against it.  On January 17, 2002, this court declared that Essex had a duty to defend RMJC in the Jaworski action. Nonetheless, we stayed the federal action as to Essex's duty to indemnify until the underlying state case was resolved.  Essex Ins. Co. v. RMJC, Inc., Civ.A. No. 01-4049, 2002 WL 32348287 (E.D. Pa. Jan. 17, 2002).  Essex proceeded to defend RMJC in the Jaworksi lawsuit.

On February 12, 2003, an eleven-person state court jury unanimously found in favor of Jaworski and against RMJC and co-defendant Rayski, apportioned liability equally between the two defendants on a joint and several basis, and awarded damages in the amount of $350,000.  In response to a special interrogatory, the jury found that Jaworksi had not acted negligently during the

-3-

incident.[2]  The Pennsylvania Superior Court affirmed the state court judgment on appeal, and the Pennsylvania Supreme Court denied RMJC's petition for allowance of appeal.  <u>Jaworski v. RMJC, Inc.</u>, 858 A.2d 1290 (Pa. Super. 2004) (table), <u>appeal denied</u>, 868 A.2d 452 (Pa. 2005) (table).  Shortly thereafter, on March 10, 2005, Essex paid the entire judgment including delay damages on behalf of RMJC in the amount of $410,315.15.  By operation of Rule 238 of the Pennsylvania Rules of Civil Procedure, an additional $60,315.15 in delay damages had been added to the original judgment of $350,000 by the time of payment.

In a Memorandum dated May 23, 2005, we granted RMJC's motion for summary judgment and declared that Essex had a duty to indemnify RMJC for the judgment in the <u>Jaworski</u> action.  We did so because the jury had found negligence on the part of RMJC which was covered under the insurance policy.  The Court of Appeals affirmed our Order on the issue of Essex's duty to defend but vacated it on the issue of indemnification and remanded the action for further proceedings in that regard.  The Court ruled that we could not simply rely on the jury's negligence finding in the underlying action in deciding the indemnity issue and that the evidence in the record at the summary judgment stage was insufficient to find for either party as a matter of law.  <u>Essex</u>

---

2.  Notably, the state trial court intentionally refrained from presenting to the jury a special interrogatory as to the occurrence of an assault and/or battery.

Ins. Co. v. RMJC, Inc., 198 Fed. Appx. 179, 187 (3d Cir. 2006). We have now heard additional testimony about the events at the Show and Tel Show Bar on the evening of March 26, 2000.

Under Pennsylvania law, when an insurer relies on an alleged insurance policy exclusion as the basis for denial of insurance coverage, the insurer bears the burden of proving such a defense. Nationwide Mutual Ins. Co. v. Cosenza, 258 F.3d 197, 206-07 (3d Cir. 2001). "The proper focus regarding issues of coverage under insurance contracts is the reasonable expectation of the insured." Britamco Underwriters, Inc. v. Weiner, 636 A.2d 649, 651 (1994). The court must thus look at the insurance policy to determine, as a matter of law, whether the language is ambiguous. Forum Ins. Co. v. Allied Sec., Inc., 866 F.2d 80, 81 (3d Cir. 1989). Where a term in an insurance policy possesses a clear legal or common meaning that may be supplied by a court, the contract is not ambiguous. City of Erie v. Guaranty Nat'l Ins. Co., 109 F.3d 156, 163 (3d Cir. 1997).

The pertinent language in this case is the policy's "Assault and/or Battery" exclusion. As noted earlier, the language reads:

> This insurance does not apply to any claim, suit cost or expense arising out of:
>
> Assault and/or Battery or out of any act or omission in connection with the prevention or suppression of such acts, whether caused by or at the instigation or direction of any Insured, Insured's Employees, patrons or any other person.

We conclude that the terms "assault" and "battery" are unambiguous. The Court of Appeals has defined them as follows:

> Under Pennsylvania law, an individual is guilty of the crime of assault if he/she "attempts to cause or intentionally or recklessly causes bodily injury to another" or "attempts by physical menace to put another in fear of imminent serious bodily injury." 18 Pa. C.S.A. § 2701. The tort of assault is defined as "an intentional attempt by force to do any injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person." Renk v. City of Pittsburgh, 537 Pa. 68, 641 A.2d 289, 293 (1994).

Essex Co. v. Starlight Management Co., 198 Fed. Appx. 179, 183 (3d Cir. 2006).

We then must determine whether the policy language "arising out of" is ambiguous. Under Pennsylvania jurisprudence, "arising out of means causally connected with, not proximately caused by. But for causation, i.e., a cause and result relationship, is enough to satisfy this provision of the policy." Forum Ins., 866 F.2d at 82; see also Still v. Great Northern Ins. Co., Civ.A. No. 07-339, 2007 WL 1244518 (E.D. Pa. Apr. 27, 2007); McCabe v. Old Republic Ins. Co., 228 A.2d 901, 903 (Pa. 1967). "[C]ourts have uniformly interpreted 'arising out of' as providing liability if the alleged injuries would not have occurred 'but for' the operations or negligence of the named insured." Maryland Cas. Co. v. Regis Ins. Co., Civ.A. No. 96-1790, 1997 U.S. Dist. LEXIS 4359, at *9 (E.D. Pa. Apr. 4, 1997).

We conclude that the term "arising out of" is likewise unambiguous.

Essex bears the burden of proving that an assault or battery was a "but for" cause of Jaworski's injuries.  Under the language of the exclusion, Essex must only establish that the assault or battery was committed by a person on the premises.  The assailant does not need to have been an RMJC employee or agent.

We first note that Terrence Benson, a bouncer employed at the Show and Tel, was convicted in the Court of Common Pleas of Philadelphia County of assault on Jaworski on the night in question.  Because the crime of simple assault in Pennsylvania carries a maximum term of imprisonment of two years, 18 Pa. C.S.A. § 2701(b), this evidence is an exception to the hearsay rule as a judgment of a previous conviction.[3]  The Court of Appeals commented in its opinion:  "For reasons not at all apparent to us, Essex even failed to produce the additional evidence that Terrence Benson had been convicted of simple assault in Philadelphia Municipal Court [sic] for his conduct at the Show and Tel that night." Essex Ins. Co. v. RMJC, Inc., 198 Fed. Appx. 179, 185 n.9 (3d Cir. 2006).  The conviction is presently before us and is clearly probative.

---

3.  "Evidence of a final judgment, entered after a trial or upon a plea of guilty ... adjudging a person guilty of a crime punishable by death or imprisonment in excess of one year, to prove any fact essential to sustain the judgment" is not excluded by the hearsay rule.  Fed. R. Evid. 803(22).

-7-

There is now additional admissible evidence before this court to establish that an assault occurred.  Essex introduced new testimony at the instant trial from three of Jaworski's fellow bachelor party attendees, men who were not Jaworski's close friends and have never had a personal or monetary stake in this case.  Although none saw what transpired outside on the stairway, all testified that Show and Tel bouncers brutally set upon, struck, and kicked Jaworski inside the bar and afterward physically dragged him outside.[4]  The only competing testimony offered by RMJC is that of Scott DiGise, a Show and Tel employee at the time of the incident and personal friend of Kevin Stone, the manager of the business.  Although DiGise asserted that Jaworski appeared drunk and instigated the conflict with Benson, he conceded that a physical altercation of some kind did take place within the bar and that Benson forcibly escorted Jaworski to the exit.  In light of all of this evidence, Essex has proven that Jaworski was the subject of an assault or battery inside the premises that night.

We are also satisfied that an assault or battery occurred outside the premises on the stairway.  Jaworski's own testimony that he was thrown down the stairs has been unwavering from his first conversation with police in March, 2000.  We find him to be credible.  The only testimony or evidence suggesting

---

4. Although all three concede various levels of intoxication at the time of the incident, their testimony has remained internally consistent and plausible throughout the Jaworski litigation.

that Jaworski was not thrown down the stairs comes from Kevin Stone, the long-time manager of the Show and Tel and RMJC's paramount witness. Stone testified that he observed Jaworski walk backward toward the edge of the steps and later saw him lying on his back at the bottom of the steps. Stone added that no bouncer could have pushed or thrown Jaworski in the interim. We do not find his testimony to be credible. By contrast, medical testimony offered by Essex in state court demonstrated that Jaworski landed face first, a proposition which Jaworski's own repeated and consistent testimony supports. We further find, based both on the state court record in the <u>Jaworski</u> action and the supplemental testimony presented here, that Jaworski was not intoxicated at the time of the incident.

Essex has proven by a preponderance of the evidence that Jaworski's injuries at the Show and Tel on the evening of March 26, 2000 arose out of an assault and battery and that there was "but for" causation between the assault and battery and his injuries. Accordingly, Essex has established that the assault and/or battery exclusion in its insurance policy applies and that it has no duty to indemnify RMJC, its insured, for the judgment entered against it in the underlying <u>Jaworski</u> action.

II.

Essex now seeks restitution from RMJC in the amount of the $410,315.15 judgment, which included delay damages of $60,315.15. A party can obtain restitution based on the equitable doctrine of unjust enrichment "where the claimant [can]

show that a benefit was wrongfully secured or passively received, and that it would be unconscionable for the party receiving the benefit to retain it without payment." Burgettstown-Smith Twp. Joint Sewage Auth. v. Langeloth Townsite Co., 588 A.2d 43, 45 (Pa. Super. 1991); see also Meehan v. Cheltenham Twp., 189 A.2d 593, 595 (Pa. 1963); Restatement, Restitution § 1 (1936).

RMJC counters that where an express contractual relationship exists between the parties, remedies sounding in restitution or unjust enrichment are generally unavailable. See, e.g., Matter of Penn Cent. Transp. Co., 831 F.2d 1221, 1230 (3d Cir. 1987); Reilly Foam Corp. v. Rubbermaid Corp., 206 F. Supp. 2d 643, 659 (E.D. Pa. 2002). It cites the insurance policy which constitutes a contract between it and Essex. As such, RMJC argues that Essex has no legal grounds for recovery of the funds that it disbursed to Mr. Jaworski in satisfaction of the state court judgment.

The legal purpose behind this limit on restitution is to prevent a party from seeking to be released on equitable grounds from the unfavorable consequences of its bargain. "Quasi-contract is not applicable to agreements deliberately entered into by the parties however harsh the provisions of such contracts may seem in the light of subsequent happenings." Third Nat'l Bank & Trust Co. of Scranton v. Lehigh Valley Coal Co., 44 A.2d 571, 574 (Pa. 1945). As Judge Dalzell of this court has explained:

> [The rule] embodies the principle that
> parties in contractual privity ... are not
> entitled to the remedies available under a
> judicially-imposed quasi contract because the
> terms of their agreement (express and
> implied) define their respective rights,
> duties, and expectations.  When the
> non-breaching party elects to sue on the
> contract, ordinary contract rules limit
> compensatory damages to his expectancy
> interest, even if this measure of relief
> fails to disgorge the breacher's profits.

Curley v. Allstate Ins. Co., 289 F. Supp. 2d 614, 620 (E.D. Pa. 2003).  In other words, "[i]f a plaintiff agrees to do certain work for a certain price, the plaintiff may not use unjust enrichment theory to gain additional compensation for that work beyond the agreed-on price."  PDP Enters. v. Nw. Human Servs., No. 509-40864, 2001 WL 1807942, at *4 (C.P. Aug. 31, 2001) (citing Horsham Twp. v. Weiner, 255 A.2d 126, 130-31 (Pa. 1969)).

Pennsylvania law, however, provides that even in the presence of an express contract, "when one party performs services wholly outside of the scope of the contract," restitution remains available as an avenue for recovery. Combustion Sys. Servs., Inc. v. Schuylkill Energy Res., Inc., Civ.A. No. 92-4228, 1993 WL 523713, at *5 (E.D. Pa. Dec. 15, 1993); see also Hershey Foods Corp. v. Ralph Chapek, Inc., 828 F.2d 989, 999 (3d Cir. 1987); PDP Enters., 2001 WL 1807942, at *4.  The rationale behind the exception is obvious.  Where the parties to a contract have *not* reached an agreement or bargain surrounding a particular undertaking, a dispute over a matter

outside the contract should be governed no differently than if the parties had had no express contractual relationship at all.[5]

Essex is not attempting to modify its contract with RMJC so as to preclude a claim for restitution premised on unjust enrichment. The insurance policy issued by Essex to RMJC simply does not address the question concerning the payment by Essex of an underlying judgment against its insured when the issue of which of the two is ultimately responsible for the judgment remains contested. The parties did not consider or reach a bargain as to that point, and thus the subject of reimbursing Essex is not one covered by the contract. Accordingly, restitution is not precluded because of the existence of an express contractual relationship between the parties.

We next find that RMJC has received a significant benefit from Essex and that it would be unjust enrichment for RMJC to retain the benefit without reimbursing Essex. As noted above, the Superior Court of Pennsylvania affirmed the judgment entered in favor of Jaworski and against RMJC in the Court of Common Pleas. Jaworski v. RMJC, Inc., 858 A.2d 1290 (Pa. Super. 2004) (table). The Pennsylvania Supreme Court denied the petition for allowance of an appeal. Jaworski v. RMJC, Inc., 868 A.2d 452 (Pa. 2005) (table). After exhaustion of all appeals, Essex, on March 10, 2005, paid the 410,315.15 judgment in issue,

---

5. Of course, whether a matter is outside the scope of a contract is a matter for the factfinder. United Artists Theatre Circuit, Inc. v. Monarch, Inc., Civ.A. Nos. 94-2155, 95-6894, 1996 WL 711483, at *7 (E.D. Pa. Dec. 9, 1996).

which, of course, satisfied the judgment against RMJC and relieved RMJC of any further obligation to Jaworski.

It must be emphasized that both before and after Essex satisfied the judgment, the question of whether RMJC or Essex would ultimately be responsible for the judgment remained open. It was clear to Essex and RMJC from the very beginning of the Jaworski action that indemnification was contested and would not be resolved until after the state court negligence trial ended. This sort-it-out-later progression is characteristic of cases in which a conflict exists between the version of events that an insurer must advocate pursuant to a duty to defend at the insured's trial and the version of events that would relieve the insurer of its duty to indemnify.  Here, a conflict existed. Essex, as part of its duty to defend, could not have raised the issue of assault and battery at the trial.  To do so at that point would have undermined the insurance coverage protecting RMJC.

Pennsylvania courts have traditionally denied the application of collateral estoppel in these cases, thereby allowing the insurer and insured to resolve their conflict over indemnification in a separate lawsuit after the victim has recovered in its action against the insured.  See Ranger Ins. Co. v. Gen. Accident Fire and Life Assurance Corp., Ltd., 800 F.2d 329, 332 (3d Cir. 1986); Vaksman v. Zurich Gen. Accident & Liab. Ins. Co., 94 A.2d 186 (Pa. Super. 1953).  Indeed, both this court and the Court of Appeals have already concluded that Essex was

-13-

not collaterally estopped from contesting indemnification and seeking reimbursement even though it has paid the underlying judgment in Jaworski.  See Essex Ins. Co. v. RMJC, Inc., No. 01-4049, 2005 WL 1221756, at *2 (E.D. Pa. May 23, 2005), rev'd on other grounds, Essex Co. v. Starlight Management Co., 198 Fed. Appx. 179 (3d Cir. 2006).

If Essex had adopted a wait-and-see attitude until the conclusion of its current lawsuit before making payment to Jaworski, either it or RMJC would have been left to satisfy a much larger judgment on which additional delay damages would have continued to accrue under Rule 238 of the Pennsylvania Rules of Civil Procedure.  By paying the money to Jaworski when it did before this court decided whether it or RMJC would ultimately be liable, Essex protected not only itself but also its insured, RMJC, from having to expend an even larger amount when this action was finally decided.  As it has turned out, had Essex not advanced the $410,315.15, RMJC would now be faced with paying Jaworski a significantly greater amount.[6]  In summary, it would be unconscionable for RMJC, which is liable for the Jaworski judgment, not to pay restitution to Essex.

Since RMJC has been unjustly enriched and Essex has satisfied the criteria for restitution, we will enter judgment in

---

6. Such further delay or litigation would also have been inimical to the interest of Jaworski, who was entitled to the judicially determined and already long delayed compensation for the serious injuries he had suffered.

favor of Essex and against defendant RMJC in the amount of $410,315.15.

```
             IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ESSEX INSURANCE CO.              :       CIVIL ACTION
                                 :
          v.                     :
                                 :
RMJC, INC.                       :       NO. 01-4049
```

## JUDGMENT

AND NOW, this 1st day of November, 2007, based on the accompanying Findings of Fact and Conclusions of Law, it is hereby ordered that judgment is entered in favor of plaintiff Essex Insurance Company and against defendant RMJC, Inc. in the amount of $410,315.15.

                              BY THE COURT:


                              /s/ Harvey Bartle III
                                                 C.J.